**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**


Michael David Hulen

    v.

Carolyn W. Colvin, Acting
Commissioner, Social
Security Administration

Civil No. 15-cv-035-LM
Opinion No. 2016 DNH 025


**O R D E R**


Pursuant to 42 U.S.C. § 405(g), Michael Hulen moves to reverse the Acting Commissioner's decision to deny his applications for Social Security disability insurance benefits, or DIB, under Title II of the Social Security Act, 42 U.S.C. § 423, and for supplemental security income, or SSI, under Title XVI, 42 U.S.C. § 1382. The Acting Commissioner, in turn, moves for an order affirming her decision. For the reasons that follow, this matter is remanded to the Acting Commissioner for further proceedings consistent with this order.


**I. Standard of Review**

The applicable standard of review in this case provides, in pertinent part:

> The [district] court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing. The findings of

> the Commissioner of Social Security as to any fact, if
> supported by substantial evidence, shall be conclusive
> . . . .

42 U.S.C. § 405(g) (setting out the standard of review for DIB
decisions); see also 42 U.S.C. § 1383(c)(3) (establishing §
405(g) as the standard of review for SSI decisions).  However,
the court "must uphold a denial of social security . . .
benefits unless 'the [Acting Commissioner] has committed a legal
or factual error in evaluating a particular claim.'"  Manso-
Pizarro v. Sec'y of HHS, 76 F.3d 15, 16 (1st Cir. 1996) (per
curiam) (quoting Sullivan v. Hudson, 490 U.S. 877, 885 (1989)).

     As for the statutory requirement that the Acting
Commissioner's findings of fact be supported by substantial
evidence, "[t]he substantial evidence test applies not only to
findings of basic evidentiary facts, but also to inferences and
conclusions drawn from such facts."  Alexandrou v. Sullivan, 764
F. Supp. 916, 917-18 (S.D.N.Y. 1991) (citing Levine v. Gardner,
360 F.2d 727, 730 (2d Cir. 1966)).  In turn, "[s]ubstantial
evidence is 'more than [a] mere scintilla.  It means such
relevant evidence as a reasonable mind might accept as adequate
to support a conclusion.'"  Currier v. Sec'y of HEW, 612 F.2d
594, 597 (1st Cir. 1980) (quoting Richardson v. Perales, 402
U.S. 389, 401 (1971)).  But, "[i]t is the responsibility of the
[Acting Commissioner] to determine issues of credibility and to

draw inferences from the record evidence.  Indeed, the
resolution of conflicts in the evidence is for the [Acting
Commissioner], not the courts." Irlanda Ortiz v. Sec'y of HHS,
955 F.2d 765, 769 (1st Cir. 1991) (per curiam) (citations
omitted).  Moreover, the court "must uphold the [Acting
Commissioner's] conclusion, even if the record arguably could
justify a different conclusion, so long as it is supported by
substantial evidence." Tsarelka v. Sec'y of HHS, 842 F.2d 529,
535 (1st Cir. 1988) (per curiam).  Finally, when determining
whether a decision of the Acting Commissioner is supported by
substantial evidence, the court must "review[] the evidence in
the record as a whole." Irlanda Ortiz, 955 F.2d at 769 (quoting
Rodriguez v. Sec'y of HHS, 647 F.2d 218, 222 (1st Cir. 1981)).

## II. Background

The parties have submitted a Joint Statement of Material
Facts, document no. 18.  That statement is part of the court's
record and will be summarized here, rather than repeated in
full.

Hulen was incarcerated in the New Hampshire State Prison
("NHSP") from December of 2003 until September of 2009.  He was
on parole for approximately three and one half years, but went
back to prison in 2013 as a result of a parole violation.

In January of 2010, Hulen applied for SSI and DIB.  In a Function Report that Hulen submitted in conjunction with his application, he stated that he could walk 300 to 500 feet before needing to stop and rest for three to five minutes.  He also stated that he did not do yard work because it was "just too painful and hard to do on crutches."  Tr. 155.  Finally, he stated that he had received a prescription for crutches in December of 2009 and always used them.

After performing a consultative examination at the request of the Social Security Administration, Dr. Ralph Wolf diagnosed Hulen with bilateral degenerative arthritis in his knees.  For his arthritic knees, Hulen has been treated with pain medication, injections, and physical therapy.  Surgery has been considered, but ruled out because of Hulen's obesity.[1]

At his hearing, Hulin testified that he was given crutches during a visit to a hospital emergency room in December of 2009. In a letter dated April 8, 2010, addressed to whom it may concern, nurse Nancy Clayman of Harbor Health Care Clinic wrote:

> He [Hulen] continues to need crutches and obviously has difficulty with ambulation.  This now has caused other issues, such as acute carpel tunnel syndrome.

---

[1] During the relevant time period, Hulen's weight has ranged between 325 and 400 pounds.

Tr. 391.  The apparent purpose of Clayman's letter was to
encourage the people running the shelter where Hulen was staying
to let him remain in the facility during the day, so he could
keep off his feet and take a break from using his crutches.
Shortly after Clayman wrote the letter quoted above, Dr. Dana
O'Shea gave Hulen a prescription for forearm crutches,[2] which
were intended to relieve the pressure on Hulen's wrists and
hands that resulted from using standard crutches.  When Hulen
went back to prison after his parole violation, he was issued a
cane, but was not allowed to have crutches.

In the report on his consultative examination in May of
2010, Dr. Wolf noted: "The claimant ambulated with an antalgic
gait using two single-prong crutches."  Tr. 316.  Dr. Wolf
concluded his report with the following recommendation:

> Any full-time sitting or driving activity with a
> minimal amount of walking should be possible now and
> for the long-term future.  Heavy manual labor and
> prolonged weight bearing is not recommended.

Id. at 317.

In May of 2010, non-examining state-agency consultant Dr.
Charles Meader stated, in a Physical Residual Functional

---

[2] A forearm crutch is "a crutch whose top is at the level of
the forearm, with a hand bar as well as a cuff that goes around
the forearm to increase stability."  Dorland's Illustrated
Medical Dictionary 437 (32nd ed. 2012).

Capacity Assessment, that "crutches use is not continuous according to MER [medical evidence of record] and there is no MER to indicate they were prescribed 12/2009." Tr. 319. When assessing Hulen's symptoms, Dr. Meader explained:

> MER indicates there is MDI [medically determinable impairment] support for allegations but no direct MER evidence for crutches continuously needed or medically prescribed in 12/2009 as claimed. Claimant thus is not credible in this context. He did not need ambulatory aids at 9/9/2009 prison infirmary visit. He further states he can walk 300-500 feet before resting 2-3 minutes.

Tr. 323. In the narrative section of his assessment, Dr. Meader added to his discussion of Hulen's use of crutches:

> MER indicates morbid obesity and deconditioned. Released from long prison incarceration 5/2003 to parole 9/2009. [Social Security Administration] [i]nterviewer intake observation face to face indicated: "He was walking with the help of crutches. He was rubbing his knee while seated. He had a lot of difficulty getting up from the chair". This is a SOMATIC evaluation only.
>
> . . . .
>
> MER indicates he is independent and uses no ambulatory aids except crutches at times. [no MER for prescribing encounter claimed 12/2009]. . . . He is limited [in his capacity for] lifting and can walk 300-500 feet before resting 3-5 minutes. Symptoms relate to MDI and based on the MER all allegations are credible except crutches use is not continuous.

Tr. 323, 325.

In a Medical Source Statement of Ability to Do Work-Related Activities (Physical) completed in May of 2011, nurse

practitioner Joanne Pomerantz stated that for Hulen, a
"medically required hand-held assistive device is necessary for
ambulation."  Tr. 451.

In June of 2011, Hulen received a hearing before an
Administrative Law Judge ("ALJ"), who determined that he was not
disabled.  Hulen appealed to this court, which granted the
Commissioner's assented-to motion to remand.  In turn, the
Appeals Counsel remanded Hulen's case to the ALJ with various
instructions, including a directive to "[f]urther consider
whether the claimant's impairment meets or equals Listing
1.02A."  Tr. 531.

Regarding the ALJ's determination that Hulen's arthritis
did not meet the listing for major dysfunction of a joint, the
Appeals Council had this to say:

> The hearing decision indicates that the claimant did
> not meet Listing 1.02A because the medical evidence of
> record indicated that the claimant could ambulate
> sufficiently to carry out activities of daily living.
> However, the hearing decision did not explain what
> medical evidence of record it relied upon; further,
> the medical evidence of record does not appear to
> support the decision's conclusion.  The claimant
> testified that he needed two crutches to ambulate, and
> the medical evidence of record indicated that the
> crutches were prescribed by Dr. Dana O'Shea in April
> 2010.  In addition, the claimant's nurse practitioner
> indicated that the claimant used a medically required
> hand-held assistive device.  Moreover, another nurse
> indicated that the claimant's bone-on-bone arthritis
> required surgery once other medical issues had been
> addressed and that the claimant needed to use
> crutches.  Finally, Ralph Wolf, M.D., the consultative

examiner, indicated that the claimant ambulated with
an antalgic gait using two crutches and noted that the
claimant was limited to minimal walking and no
prolonged weight bearing.  The claimant also testified
that his activities of daily living were largely
restricted to a single room that he rented in a
rooming house.  Further consideration is required.

Tr. 530 (citations to the record omitted).

On remand, the ALJ conducted a second hearing, which was

convened at the NHSP.  After the hearing, the ALJ issued a

decision that includes the following relevant findings of fact

and conclusions of law:

3.   The claimant has the following severe impairments:
degenerative arthritis of the knees, obesity,
depression, an anxiety disorder and a personality
disorder (20 CFR 404.1520(c) and 416.920(c)).

. . . .

4.   The claimant does not have an impairment or
combination of impairments that meets or medically
equals the severity of one of the listed impairments
in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR
404.1520(d), 404.1525, 404.1526, 916.920(d), 416.925
and 416.926).

. . . .

6.   The claimant is unable to perform any past
relevant work (20 CFR 404.1565 and 416.965).

. . . .

10.   Considering the claimant's age, education, work
experience, and residual functional capacity, there
are jobs that exist in significant numbers in the
national economy that the claimant can perform (20 CFR
404.1569, 404.1569(a), 416.969, and 416.969(a)).

Tr. 472, 474, 482.  Specifically, the ALJ determined that
Hulen's residual functional capacity ("RFC") allowed him to
perform nearly a full range of unskilled sedentary work.

### III. Discussion

A. The Legal Framework

To be eligible for disability insurance benefits, a person
must: (1) be insured for such benefits; (2) not have reached
retirement age; (3) have filed an application; and (4) be under
a disability.  42 U.S.C. §§ 423(a)(1)(A)-(D).  To be eligible
for supplemental security income, a person must be aged, blind,
or disabled, and must meet certain requirements pertaining to
income and assets.  42 U.S.C. § 1382(a).  The question in this
case is whether Hulen was under a disability from May 1, 2003
through September 26, 2014.

To decide whether a claimant is disabled for the purpose of
determining eligibility for either DIB or SSI benefits, an ALJ
is required to employ a five-step process.  See 20 C.F.R. §§
404.1520 (DIB) and 416.920 (SSI).

> The steps are: 1) if the [claimant] is engaged in
> substantial gainful work activity, the application is
> denied; 2) if the [claimant] does not have, or has not
> had within the relevant time period, a severe
> impairment or combination of impairments, the
> application is denied; 3) if the impairment meets the
> conditions for one of the "listed" impairments in the
> Social Security regulations, then the application is
> granted; 4) if the [claimant's] "residual functional

capacity" is such that he or she can still perform
past relevant work, then the application is denied; 5)
if the [claimant], given his or her residual
functional capacity, education, work experience, and
age, is unable to do any other work, the application
is granted.

Seavey v. Barnhart, 276 F.3d 1, 5 (1st Cir. 2001) (citing 20

C.F.R. § 416.920).

        The claimant bears the burden of proving that he is

disabled.  See Bowen v. Yuckert, 482 U.S. 137, 146 (1987).  He

must do so by a preponderance of the evidence.  See Mandziej v.

Chater, 944 F. Supp. 121, 129 (D.N.H. 1996) (citing Paone v.

Schweiker, 530 F. Supp. 808, 810-11 (D. Mass. 1982)).  Finally,

        [i]n assessing a disability claim, the [Commissioner]
        considers objective and subjective factors, including:
        (1) objective medical facts; (2) [claimant]'s
        subjective claims of pain and disability as supported
        by the testimony of the [claimant] or other witness;
        and (3) the [claimant]'s educational background, age,
        and work experience.

Mandziej, 944 F. Supp. at 129 (citing Avery v. Sec'y of HHS, 797

F.2d 19, 23 (1st Cir. 1986); Goodermote v. Sec'y of HHS, 690

F.2d 5, 6 (1st Cir. 1982)).

        B. Hulen's Claims

        Hulen claims that the ALJ erred by: (1) determining, at

step three, that his arthritis does not meet or equal the

severity of Listing 1.02A because he is able to ambulate

effectively without assistive devices; (2) determining, at step

three, that his depression, anxiety disorder, and personality disorder do not meet or equal the severity of Listings 12.04, 12.06, and 12.08; (3) improperly weighing the medical opinions; (4) formulating an RFC that is not supported by substantial evidence; and (5) failing to elicit testimony from a vocational expert.  Hulen's first argument is persuasive, and dispositive.

The listing for the physical impairment at issue in this case, major dysfunction of a joint, defines that impairment to include:

> [G]ross anatomical deformity . . . and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically accepted imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s).  With:
>
> A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 1.02.  With respect to effective ambulation, the regulations provide:

> To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living.  They must have the ability to travel without companion assistance to and from a place of employment or school.  Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine

ambulatory activities, such as shopping and banking,
and the inability to climb a few steps at a reasonable
pace with the use of a single hand rail.  The ability
to walk independently about one's home without the use
of assistive devices does not, in and of itself,
constitute effective ambulation.

20 C.F.R. Pt. 404, Subpt. P, App. 1, 1.00B2b(2).

As the court has noted, the Appeals Council directed the ALJ, on remand, to consider the following evidence suggesting an inability to ambulate effectively: (1) Dr. O'Shea's prescription for crutches; (2) Pomerantz's statement that Hulen used a medically required hand-held assistive device; (3) Clayman's statement that Hulen needed to use crutches; and (4) Dr. Wolf's observation that Hulen used crutches and was limited to minimal walking and no prolonged weight bearing.

In his decision, the ALJ says nothing about Dr. O'Shea's prescription for crutches.  But, the ALJ does say this: "Of note, in December 2009, Dr. O'Shea reported that the claimant had ridden his bicycle to his appointment and was not using crutches."  Tr. 475.  The treatment note the ALJ cites for that statement actually provides: "Using crutches to get around.  No crutches today as pt rode bike here."  Tr. 368.  Reporting that Hulen did not carry his crutches with him when he was riding his bicycle is not the same thing as reporting that Hulen was not using crutches.  And, in fact, Dr. O'Shea did report that Hulen was using crutches to get around.  Thus, contrary to what the

ALJ says, Dr. O'Shea did not report that Hulen was not using crutches.  The ALJ also reports, accurately, Dr. O'Shea's report, in August of 2010 that Hulen was engaging in aqua therapy and could ride an exercise bicycle with low resistance. But, the ALJ does not indicate how Hulen's ability to do aqua therapy or ride an exercise bicycle is evidence that he had the ability to effectively ambulate without crutches.

With respect to Pomerantz's Medical Source Statement, the ALJ acknowledges Pomerantz's opinion that Hulen required an assistive device, but discounts that opinion on grounds that Pomerantz "did not opine that the claimant met any listing." Tr. 475.  The form Pomerantz completed, however, asked only about specific exertional, postural, manipulative, visual/communicative, and environmental limitations; it did not ask for an opinion on whether Hulen's physical impairments met or medically equaled the severity of a listed impairment.  Thus, the lack of such an opinion provides no basis for discounting Pomerantz's statement that Hulen required the use of a hand-held assistive device.

Turning to Clayman's statement that Hulen "continues to need crutches and obviously has difficulty with ambulation," Tr. 391, the ALJ discounts that statement on grounds that Clayman "did not describe any mechanical reason for the claimant's use

of crutches to assist with ambulation," Tr. 475.  However, two sentences before she said that Hulen needed crutches, Clayman said this: "He has bilateral knee bone on bone arthritis and will require surgery for this condition."  Tr. 391.  Bone on bone arthritis in both knees, of sufficient severity to require surgery, is a mechanical reason for using crutches.  Thus, the ALJ's dismissal of Clayman's statement misses the mark as a factual matter.

Finally, the ALJ discounts the observations and recommendations in Dr. Wolf's examination report because "Dr. Wolfe [sic] did not opine that the claimant met any Listing." Tr. 474.  But, like Pomerantz's Medical Source Statement, Dr. Wolf's report gives no indication that its author ever considered the operative step-three question in the first place. Accordingly, while Dr. Wolf did not opine that Hulen's arthritis met the criteria for any listing, he also did not opine that Hulen's impairment fell short of any listing.  In sum, Dr. Wolf's silence on the question of whether Hulen's arthritis met or medically equaled the severity of a listed impairment provides no basis for discounting his observations and recommendations.

The long and the short of it is this.  The medical evidence of record that the Appeals Council directed the ALJ to consider

includes a prescription for crutches, unaddressed by the ALJ, and statements from several medical professionals that Hulen needed to avoid prolonged weight bearing, used crutches, and needed to use crutches to ambulate.  The ALJ's explanations for discounting that evidence are manifestly unpersuasive because they are not supported by substantial evidence.

In addition to attempting to discount the evidence he was directed to consider by the Appeals Council, the ALJ also points to other evidence to support his determination that Hulen did not require the use of crutches or other bilateral hand-held assistive devices.  The court considers that evidence below.

The ALJ first notes that when Hulen saw Dr. Stephanie Lynch for a psychological examination in May of 2010, he was using crutches and also reported to her that he could walk, take public transportation, drive, cook simple meals, shop, use the library, go to church and a soup kitchen, and do laundry and light housework.  The ALJ fails to explain, however, how Dr. Lynch's Comprehensive Psychological Profile supports his determination that Hulen could ambulate without crutches.

The ALJ next turns his attention to Dr. Meader's RFC assessment.  To begin, the ALJ suggests that Dr. Meader relied upon the December 2009 treatment note in which Dr. O'Shea reported that Hulen had arrived to an appointment on a bicycle,

15

but the court can locate no reference to that note in Dr.
Meader's RFC assessment.  Beyond that, the ALJ reports Dr.
Meader's observation that Hulen had not received a prescription
for crutches in December of 2009.  But, neither Dr. Meader nor
the ALJ acknowledge that regardless of whether Hulen received a
prescription for crutches in 2009, he did receive a prescription
from Dr. O'Shea in April of 2010 for forearm crutches to replace
the standard crutches that he had been given, with or without a
prescription, in December of 2009.  To be sure, Dr. Meader
opined that Hulen's arthritis was not a listing-level
impairment, but he did so without considering the fact that
Hulen had been prescribed crutches by Dr. O'Shea.

    The ALJ next mentions an office note by Dr. Kenneth
Weintraub, who saw Hulen in early April of 2010 for a problem
with his left ankle, but who did not examine Hulen's knees.  Dr.
Weintraub noted that Hulen was using crutches, but the ALJ
discounts that observation because Dr. Weintraub "did not
indicate that this was needed in order for the claimant to
ambulate."  Tr. 475.  But, the ALJ gives no reason why Dr.
Weintraub – who did not examine Hulen's knees – would have had
anything to say about whether Hulen needed his crutches to
ambulate.  Thus, Dr. Weintraub's failure to comment on whether
Hulen needed the crutches he was using is not substantial

evidence that Hulen did not need them.  The court further notes
that when Dr. Weintraub observed Hulen using crutches, he had
not yet received his prescription for forearm crutches.  It is
difficult to imagine that Hulen would have endured the pain that
resulted from using standard crutches if he did not need them to
get around.

The ALJ next cites a June 8, 2011, chart document authored
by Pomerantz indicating that Hulen "had a normal gait and
station, normal alignment and mobility of his spine and hips,
and normal range of motion and strength of his upper
extremities."  Tr. 475.  Two days before Pomerantz wrote the
June 8 chart document, she wrote a letter, addressed to whom it
may concern, stating:

> Mr Hulen has a medical necessity for water exercise
> . . . .  Because of the osteoarthritis in both his
> knees he is unable to do any type of exercise other
> than water/pool.  He cannot ambulate without his
> crutches and he is unable to ride a stationary bike.

Tr. 650.  In light of the June 6 letter, the June 8 chart
document is not substantial evidence that Hulen was able to
ambulate without crutches.[3]

---

[3] The ALJ also says that Hulen reported to Pomerantz
that he was still "able to move around his apartment okay."
Tr. 475.  However, the SSA regulations provide that a
claimant's "ability to walk independently about [his] home
without the use of assistive devices does not, in and of
itself, constitute effective ambulation."  20 C.F.R. Pt.
404, Subpt. P, App. 1, 1.00B2b(2).

The various office notes by Dr. Jon Mazur, Dr. Gargi Kundu, and Dr. Keri Lemmond on which the ALJ relies are more of the same.  Dr. Mazur repeatedly observed Hulen using crutches.  See Tr. 715, 717, 721, 723, 725 ("Currently, he ambulates with bilateral Lofstrand crutches.").[4]  In a chart document memorializing Hulen's first visit with him, on June 25, 2010, Dr. Mazur reported that Hulen was limping and that his gait was "quite antalgic and labored."  Tr. 726.  Dr. Kundu listed forearm crutches as one of Hulen's prescriptions.  Neither physician expressly stated that Hulen needed crutches to ambulate.  But, their notes were all written after Dr. O'Shea prescribed crutches for Hulen, and the ALJ gives no reason why Drs. Mazur or Kundu would have commented one way or the other on whether Hulen actually needed the crutches he had been prescribed and was using.

According to the ALJ, "in April 2011, the claimant was using only a cane to ambulate per Dr. Lemmond."  Tr. 471 (emphasis added).  With regard to Hulen's use of assistive devices to ambulate, Dr. Lemmond's chart documents actually say:

W[a]lks with cane assist[] because of knee problems. (Apr. 15, 2011);

Walks with assistance.  (May 18, 2011);

---

[4] Lofstrand crutches are "the most common kind of forearm crutch."  Dorland's, supra note 2, at 437.

18

Walks with assistance of <u>canes</u>. (July 31, 2011);

[W]alks with <u>canes</u> [sic] assists. (Sept. 28, 2011);

[W]alks with the aid of <u>2 walking canes</u>. Unsteady on his feet. (Nov. 9, 2011);

Walks with assistance of <u>canes</u>. (Apr. 25, 2012); and

Wal[k]s with assistance. (June 6, 2012).

Tr. 713, 710, 705, 703, 701, 697, 695 (emphasis added). Dr. Lemmond's comments are not substantial evidence that Hulen was using only a single cane and, thus, had the ability to ambulate without using two assistive devices.

The ALJ also discusses various records generated by Hulen's incarceration. He refers to a prison record indicating that Hulen used only a cane for ambulation. <u>See</u> Tr. 476. But Hulen testified that the prison would not issue him crutches. That Hulen did not use assistive devices that the prison did not allow him to have is not substantial evidence that he did not need those devices. The ALJ also refers to two prison records indicating that Hulen ambulated from one place to another, but those records say nothing about whether he had assistance while doing so. Passing references to Hulen's use of a cane in prison, where he was not allowed to have crutches, and to two occasions on which he was able to walk from one place to another, are not substantial evidence that Hulen did not need bilateral assistive devices in order to ambulate.

19

Equally unavailing is the ALJ's observation of Hulen at the hearing he conducted at the NHSP:

> Of note, the claimant presented at [the] hearing on April 17, 2014 carrying a cane.  His hands were handcuffed.  He walked without use of the cane.

Tr. 476.[5]  Hulen testified that he had a cane because the prison would not issue him crutches.  And, given that he was handcuffed at his hearing, the fact that he was carrying his cane rather than using it provides no reasonable basis for concluding that he did not need his cane to get around.  Like the medical evidence on which the ALJ relies, the evidence from Hulen's incarceration is not substantial evidence that he could ambulate effectively without the use of two hand-held assistive devices.

To sum up, the ALJ's step-three determination that Hulen's arthritis does not meet or medically equal the severity of Listing 1.02A is not supported by substantial evidence.  Accordingly, this case must be remanded for further proceedings.

### IV. Conclusion

For the reasons described above, the Acting Commissioner's motion for an order affirming her decision, document no. 19, is denied, and Hulen's motion to reverse that decision, document no. 13, is granted to the extent that the case is remanded to

---

[5] That hearing lasted just 11 minutes.

the Acting Commissioner for further proceedings, pursuant to sentence four of 42 U.S.C. § 405(g).  The clerk of the court shall enter judgment in accordance with this order and close the case.

SO ORDERED.

_____
Landya McCafferty
United States District Judge

February 9, 2016

cc:   Jared P. O'Connor, Esq.
      Terry L. Ollila, Esq.